# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5919 | **DATE** | 12/3/2001 |
| **CASE TITLE** | GRUIDL vs. R.C. WEGMAN CONSTRUCTION CO. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  ENTER MEMORANDUM OPINION AND ORDER: Defendant's motion to strike portions of plaintiff's Local 56.1(b)(3)(B) Statement of Additional Facts in opposition eto motion for summary judgment is granted. Defendant's motion for summary judgment is denied. Status hearing set for 12/19/01 at 9:30a.m.

(11) ■ [For further detail see

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 04 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | CM | 24 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |


DOCKETED
DEC 0 4 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOYLYN S. GRUIDL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Judge Ronald A. Guzman |
| v. ) | |
| ) | 00 C 5919 |
| R.C. WEGMAN CONSTRUCTION CO., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA") for alleged employment discrimination. Before the Court is defendant's motion for summary judgment pursuant to Fed. R. Civ. P. ("Rule") 56(b), as well as defendant's motion to strike portions of plaintiff's Local Rule 56.1(b)(3)(B) Statement of Additional Facts in opposition to summary judgment. For the reasons set forth below, the motion to strike is granted and the motion for summary judgment is denied.

### Motion to Strike

Under Local Rule ("LR") 56.1(b)(3)(B), a party opposing a motion for summary judgment is required to, among other things, serve and file a concise statement of "any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon."

Defendant R.C. Wegman has moved to strike certain of plaintiff's statements of additional facts, specifically Pl.'s LR 56.1(b)(3)(B) ¶¶ 195-97, because the plaintiff did not include references to the record as required by LR 56.1(b)(3)(B). This Court adheres strictly to Local Rule 56.1's

requirements and demands such adherence by the parties before it. The Court is under no obligation to "scour the record in search of a genuine issue of triable fact." *Brasic v. Heinemann's, Inc.*, 121 F.3d 281, 285 (7th Cir. 1997), and therefore is forced to rely on the parties' references to the record in their LR 56.1 statements in order to evaluate summary judgment motions effectively and expeditiously. When no record citation is given, the Court strikes the asserted statement of fact. In this case, the plaintiff stated that Carl Wegman never testified that he personally observed problems with the plaintiff in its LR 56.1 statement. Some sort of reference, perhaps to Wegman's deposition, should have been present to support that assertion. Plaintiff leaves the Court no way to evaluate the veracity of those fact assertions other than "scour[ing] the record," an unacceptable solution. Therefore, the Court strikes ¶¶ 195-97 from the LR 56.1 facts for purposes of this summary judgment motion.

However, this does not mean that plaintiff's basic assertion (that the complaints Carl Wegman claims to have relied on were never made) is deemed untrue. Of course, the employer is free to rely on information gleaned from others in making his determination, which Carl Wegman claims to have done. However, the plaintiff contends that he did not obtain such information from others - that those others never complained to him. That assertion, as it exists in the context of plaintiff's legal argument, is a basic element of the dispute between the parties and will be treated as such by the Court.

## Facts

The Court now turns to the facts of the case, which are undisputed unless otherwise noted. The defendant, R.C. Wegman Construction Co. ("R.C. Wegman"), is a general contractor and construction manager. (Def.'s LR 56.1(a)(3) ¶ 8.) R.C. Wegman builds commercial, industrial, and

governmental buildings. (*Id.*) The plaintiff, Joylyn S. Gruidl, began working for R.C. Wegman in 1982. (*Id.* at ¶ 7.) Plaintiff's duties at Wegman were numerous and included accounting, bookkeeping, payroll, accounts, job costing, and general ledger responsibilities. (*Id.* at ¶ 18.) Part of these responsibilities included providing Job Progress Summaries, which are listings of all items involved at a construction job: all trades, the overhead items, the phone, temporary phones, utilities, and all the subcontractors and the labor field. (Gruidl Dep. at 23.) When a subcontractor is paid, or when a bill is paid, these costs go, line item by line item, into the Job Progress Summary. (*Id.*)

In February of 2000, R.C. Wegman hired another employee, David Beach, then 38 years old, (Pl.'s LR 56.1(b)(3)(B) ¶ 215), as a computer processing consultant. (Def.'s LR 56.1(a)(3) ¶ 40.) At that time Carl Wegman, plaintiff's supervisor during her final year of employment at R.C. Wegman, had a conversation with the plaintiff in which he instructed her that she should be showing Beach how to do everything that she did. (*Id.* at ¶¶ 40-41.) The plaintiff told Carl that she felt threatened and confronted him about the possibility of his firing her. (*Id.* at ¶ 42.) According to plaintiff, Carl told her "There is no way I am going to get rid of you, Joy." (*Id.* at ¶ 43.)

On August 14, 2000, a meeting took place between Carl and at least two of the other owners of R.C. Wegman: Terry Bohr, Paul Wegman, and possibly Chris Wegman. (*Id.* at ¶ 144.) The details of this meeting are disputed by the parties. Although the defendant claims that the collective group decided to terminate the plaintiff, (*id.* at ¶ 144), the depositions of Bohr and Paul Wegman seem to indicate that Carl merely informed the other two of his decision to fire the plaintiff and that the decision was his alone. (Paul Wegman Dep. at 9; Bohr Dep. at 31-36.)

On August 16, 2000, Carl informed plaintiff that she was being terminated and, according to the plaintiff, stated that the company was heading in a different direction and that Wegman had

to let her go. (*Id.* at ¶ 61.) The defendant claims that plaintiff was terminated "because of her poor demeanor in dealing with employees, customers, vendors and subcontractors and for her inability to produce Job Progress Summaries." (*Id.* at ¶ 145.)

## Discussion

Under Rule. 56, summary judgment is proper when the moving party has established that no genuine issue of material fact requiring resolution at trial exists in the record and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding motions for summary judgment, the Court views all evidence in the light most favorable to the non-moving party, resolving any doubt as to the existence of genuine issues against the moving party. *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir. 1987). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, a party may not rest upon pleadings to oppose a motion for summary judgment and must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* at 248.

Claims under Title VII and the ADEA are evaluated very similarly, *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 982 (7th Cir. 1999), and can be established in either of two ways: through direct evidence, *see Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1397 (7th Cir. 1997), or through the burden-shifting analysis originally set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Stewart v. Henderson*, 207 F.3d 374, 376 (7th Cir. 2000).

Establishment of a case of discrimination by direct evidence includes an admission by the decision-maker that its actions were based on prohibited reasons, *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000), as well as circumstantial evidence, such as suspicious timing,

ambiguous statements, and behavior directed at other employees in the protected group. *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). The plaintiff's theory of her case does not rely on the direct evidence approach. Therefore, her case will be analyzed utilizing the burden-shifting analysis set forth in *McDonnell Douglas*.

Under the *McDonnell Douglas* burden-shifting approach, a plaintiff must initially establish a *prima facie* case. *Essex v. United Parcel Serv., Inc.*, 111 F.3d 1304, 1308 (7th Cir. 1997). To do so, an employee must demonstrate that "(1) [s]he belongs to some protected class, (2) [s]he performed [her] job satisfactorily (3) [s]he suffered an adverse employment action, and (4) [her] employer treated similarly-situated employees outside [her] classification more favorably." *Hughes v. Brown*, 20 F.3d 745, 746 (7th Cir. 1994). If the plaintiff sufficiently states a *prima facie* case, the burden of production then shifts to the defendant to offer a legitimate, non-discriminatory reason for the action. *Id.* Once the defendant has done so, the burden of proof shifts back to the plaintiff to demonstrate that the reasons provided by the employer are pretext for discrimination. *Id.*

The defendant concedes that, at least for the purposes of this summary judgment motion, the plaintiff has established a *prima facie* case of discrimination. (*See* Def.'s Brief Supp. Summ. J. at 7 n.1.) Because the defendant has waived the issue of the *prima facie* case, the facts going toward the *prima facie* case, *i.e.* satisfactory performance, treatment of similarly situated employees, *etc.*, will be disregarded by the Court. The Court will only address those facts and arguments going to defendant's legitimate, non-discriminatory justifications for its action and whether or not such justifications are pretextual.

"An employee may establish pretext by proving one of the following: '(1) [d]efendant's explanation had no basis in fact, or (2) the explanation was not the 'real' reason, or (3) at least the

reason stated was insufficient to warrant the discharge.'" *Id.* (quoting *Lenoir v. Roll Coaster, Inc.*, 13 F.3d 1130, 1133 (7th Cir. 1994)). "In trying to establish that an employer's explanation was merely pretextual, an employee must 'focus on the specific reasons advanced by the defendant.'" *Id.* (quoting *Smith v. General Scanning, Inc.*, 876 F.2d 1315, 1319 (7th Cir. 1989)).

R.C. Wegman has offered two legitimate non-discriminatory justifications for terminating the plaintiff – her poor demeanor and her failure to provide job progress summaries. Of the three methods set forth in *Hughes* by which the plaintiff can show pretext, plaintiff attempts to prove that the defendant's explanation has no basis in fact and that the reasons stated were not the "real" reasons. As for the third method, the sufficiency of the reason to warrant a discharge, there is no question that R.C. Wegman's stated reasons for termination, if not pretextual, are valid. It is well-established that federal courts "do not sit as a superpersonnel department that reexamines an entity's business decisions." *Baron v. City of Highland Park*, 195 F.3d 333, 341 (7th Cir. 1999). For this reason, even if the stated reasons were bad policy, or simply stupid, that fact alone does not show pretext. *Essex*, 111 F.3d at 1310.

Before the Court can evaluate the sincerity of the reasons for termination proffered by the defendant, the first question that must be answered is precisely who made the decision to fire the plaintiff. Defendant claims that the decision to fire plaintiff was made by Carl Wegman, Terry Bohr, Paul Wegman, and Chris Wegman collectively in a meeting on August 14, 2000. (Def.'s LR 56.1(a)(3) ¶ 144.) However, the depositions of Terry Bohr and Paul Wegman controvert this and suggest that Carl made the decision alone, and that Chris Wegman was not present at all. (Paul Wegman Dep. at 9; Bohr Dep. at 31-36.) As there is a dispute of fact on this question, the Court presumes, for purposes of this motion, that it was Carl alone who made the decision to fire plaintiff.

The sole question remaining for the Court is whether there is a genuine issue of fact as to whether Carl Wegman's reasons for terminating the plaintiff were truly her poor demeanor and failure to produce job progress summaries. Therefore, the only facts relevant to the determination of this motion are those going to pretext.

To show that plaintiff's poor demeanor was a true reason for her termination, the defendant relies mainly on Carl Wegman's assertion that certain individuals complained to him about Gruidl being "rude, abrasive, and disrespectful to customers, subcontractors vendors and co-employees." (Def.'s LR 56.1(a)(3) ¶ 146). The plaintiff argues that these complaints were not the real reasons for the termination by presenting evidence that these complaints never took place.

The co-employees defendant claims complained to Carl Wegman are Tom Cook, Terry Bohr, and Paul Wegman. The other complainants Carl claims to have relied on are Becky McMartlin, Todd Harris, Frank Baker, Sandy Baker, and Randy Banks. (*Id.* at ¶¶ 147-49). There is nothing cited in defendant's LR 56.1 statement, other than Carl's own affidavit, to support the assertion that McMartlin, Harris, Frank Baker, Sandy Baker, or Banks ever complained to him about the plaintiff, and the plaintiff flatly denies that she was ever rude to these individuals. (Pl.'s LR 56.1(b)(3)(A) ¶¶ 147-48). The Court notes that the depositions of Tom Cook and Terry Bohr directly contradict Defendant's LR 56.1(a)(3) ¶ 149 and Carl Wegman's Affidavit ¶ 8. For instance, Tom Cook testified in his deposition that he never complained to anyone about his working relationship with Gruidl, and Terry Bohr testified that the only person to whom he ever complained about Gruidl is his wife. (Cook Dep. at 14; Bohr Dep. at 30-31.) Finally, while Paul Wegman testified that he had previously complained to Carl about plaintiff, the complaint was made regarding a matter not stated as justification for her termination. (Paul Wegman Dep. at 8.) A genuine issue of fact therefore

exists at least as to whether Carl ever took complaints regarding the plaintiff's demeanor, and, hence, whether he genuinely relied on those complaints in firing the plaintiff.

Carl also testified that plaintiff has been verbally reprimanded for her poor demeanor. He cited three specific instances, involving himself, Robert Wegman, and Tom Cook, respectively. (Carl Wegman Dep. at 22.) He admits that when he reprimanded Gruidl, it was always based on information he received from others. (*Id.* at 26.) These sources of information allegedly include Robinson Automotive, Becky McCartlin, Todd Harris, and Frank Baker. (*Id.* ¶¶ 27, 29, 31-32.) Although he could have rightfully based his employment decision on complaints by others, there is no support in the record for the existence of these complaints other than assertions of the defendant, and the plaintiff flatly denies being rude to any of these individuals. (Pl.'s LR 56.1(b)(3)(A) ¶ 147.) With regard to the alleged reprimands by Robert Wegman and Tom Cook, Carl admits that although he had no knowledge of the subject matter of the heated discussions, he assumed they were related to the plaintiff's demeanor. (Carl Wegman Dep. at 23-25.) In fact, Carl testified that he assumed Robert Wegman had reprimanded the plaintiff because he heard general shouting, and similarly assumed that Tom Cook had reprimanded the plaintiff only because he overheard arguments between the two. (*Id.* at 23-25.)

It is important to note that "summary judgment is not a procedure for resolving a swearing contest." *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). Determinations of credibility, the weighing of evidence, and the drawing of inferences are functions for the finder of fact. *Anderson*, 477 U.S. at 255. Resolving the issues in this case, which include numerous denials back and forth and contradiction among the testimony of several witnesses, requires a credibility determination inappropriate for summary judgment. *See, e.g., JPM, Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d

270, 273 (7th Cir. 1996). In fact, a non-moving party's own deposition can constitute affirmative evidence to defeat a summary judgment motion, even if it includes only bare denials. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993).

Finally, the defendant makes much of the testimony of other individuals about plaintiff's demeanor, specifically that of Nicholas Marlowe, Charles Burke, Jodi Bruer, Joyce Dettloff, Mike Miller, and others. (Def.'s Reply Br. at 3-6.) However, the defendant does not claim that any of these individuals complained about plaintiff to Carl Wegman except for Terry Bohr, who denied making such a complaint. (Def.'s LR 56.1(a)(3) ¶¶ 147-48; Bohr Dep. at 30-31.) All of the testimony cited goes not to whether Carl acted under a true or good faith belief that the plaintiff had a poor demeanor, but rather attempts to speak to whether the defendant in fact *had* a poor demeanor, and is therefore only tangentially relevant to the question at hand. The sole issue is what Carl believed that caused him to fire the defendant at the time that he fired her. To quote the defendant's own brief, "[a]rguing about the accuracy of an employer's assessment is a distraction." (Def.'s Br. Supp. Summ. J. at 9.) "[T]he question is not whether the employer's reasons for a decision are right but 'whether the employer's description of its reasons is honest.'" *Id.* (quoting *Gustovich v. AT&T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992)).

There is no doubt that the record contains a significant amount of evidence that the plaintiff had a poor demeanor and may have contributed to a tense work environment. However, genuine issues of fact exist as to whether Carl was aware of this or, even if he was, that it was the real reason for plaintiff's termination. The plaintiff has put forth sufficient evidence to suggest that Carl's assertions about her demeanor were not based in fact or even a good faith belief but were, rather, a pretext for discrimination. A reasonable jury could find that Carl never received any complaints

about plaintiff and that he did not truly believe that the plaintiff's demeanor was so poor as to justify her termination. The numerous contradictions in the record regarding complaints to Carl, as well as the details of the August 14 meeting raise material issues of fact appropriate for a jury's consideration.

The issues around plaintiff's performance with respect to job progress summaries are more complex than the demeanor issue. The plaintiff primarily argues that defendant's claims that she was unable to produce meaningful job progress summaries have no basis in fact. This question is quite fact-intensive and, therefore, a review of the pertinent testimony regarding the job progress summaries is appropriate.

Charles Burke, R.C. Wegman's accountant, testified that plaintiff's work on job progress summaries was accurate with the exception that some of Tom Cook's summaries for which plaintiff was responsible. He stated that these summaries were incomplete due to the fact that Cook did not provide her with all the necessary and accurate information. (Burke Dep. at 10-14.) However, Burke also testified that the reason for this was a sort of personality conflict between Cook and the plaintiff. (*Id.*) According to both plaintiff and Burke, Carl was aware of the difficulties that the plaintiff had with Cook, specifically that she could not complete the summaries because he was not giving her the necessary information. (*Id.*; Gruidl Dep. at 110.) Cook himself admits that he lost or misplaced invoices more than once. (Cook Dep. at 14.)

Terry Bohr testified that the job progress summaries plaintiff produced were accurate to the extent that the information he provided her was, but that he felt she was unable to use the computer program properly regarding labor rates and change orders. (Bohr Dep. at 27-28.) This problem apparently came to the attention of Carl, who did have discussions with the plaintiff about what she

-10-

perceived to be a problem with the software. (Carl Wegman Dep. at 50-52; Gruidl Dep. at 124-27.) However, plaintiff testified extensively in her deposition about the problems she had with the computer program and that the new system was not working the way it should have. She discussed the problem at length with a representative from the software company, and, according to her, all problems with the reports were resolved approximately two months before her termination. (Gruidl Dep. at 126.) Carl Wegman, on the other hand, denies that there was any problem with the software. (Carl Wegman Dep. at 50-52.) In fact, Carl claims that the representative of the software company told him that "Joy was the one having the problem." (*Id.* at 52-53.)

Paul Wegman also testified as to the plaintiff's inability to produce accurate job progress summaries. (Paul Wegman Dep. at 13.) However, the only incident Paul referred to occurred a year and a half before plaintiff was terminated.

Finally, it is important to note that two changes were made to the way job progress summaries are done since plaintiff's termination. David Beach testified that shortly after he assumed responsibility for the summaries, he encouraged individuals to run their own reports on their own computers. (Beach Dep. at 28.) A minor cosmetic change was also made to the software in a version update. (*Id.* at 29.)

At the risk of repeating itself, the Court once again notes that in summary judgment motions "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be resolved in [her] favor." *Anderson*, 477 U.S. at 255. A non-moving party's own deposition can constitute affirmative evidence to defeat a summary judgment motion, even if it includes only bare denials. *Sarsha*, 3 F.3d at 1041. To the extent that plaintiff's and Carl Wegman's testimony conflicts, then, plaintiff's is to be believed for the purposes of this motion. Plaintiff admits that she had trouble

-11-

with the computer software and made an honest effort to correct the problem by speaking with people from the software company. The problem was also apparently fixed two months before her termination. A genuine issue of fact, then, exists as to whether or not plaintiff was truly producing unsatisfactory job progress summaries at the time she was fired.

Of course, the ultimate question is not whether the employer's reasons for a decision are right but "whether the employer's description of its reasons is honest." *Gustovich*, 972 F.2d at 848. Therefore, the ultimate question is not whether Gruidl was performing her function to the best of her abilities, but whether her admitted difficulties were truly a factor in her termination, as defendant claims they were. The key event in answering this question is the meeting on August 14, 2000, attended by Carl Wegman, Terry Bohr, Paul Wegman, and possibly Chris Wegman. Carl claims that one of the reasons for terminating plaintiff was the "lack" of job progress summaries, later clarifying that to mean that there were summaries, but they simply were not meaningful. (Carl Wegman Dep. at 61-62.) ("We were frustrated with the lack of job progress summaries.") However, in reviewing the pertinent testimony, Terry Bohr's testimony about his perceived problems with plaintiff at the time of the meeting did not address the job progress summaries, and Paul Wegman's testimony does not address any reasons for terminating Gruidl, only that Carl Wegman informed them of his decision at that time. (Bohr Dep. at 31-37; Paul Wegman Dep. at 9-10.)

The only evidence that Carl Wegman truly relied on the lack of meaningful job progress summaries in firing the plaintiff comes from Carl Wegman himself. In response, the plaintiff has put forth substantial evidence that she was, in fact, able to produce meaningful job progress summaries when given all necessary information and once the computer system was set up properly. This suggests that the defendant's explanation has "no basis in fact." *Hughes*, 20 F.2d at 746. It is

worth repeating again that the defendant's good faith beliefs, and not the accuracy thereof, are at issue here. However, the evidence put forth by the plaintiff in this case, such as the fact that she had numerous conversations with him regarding her problems and his knowledge of the technical support she was receiving, shows that Carl was aware of the true nature of the plaintiff's difficulties and that they were being addressed. This tends to show that those difficulties may not have been true factors in the plaintiff's termination. And, the plaintiff can show pretext by showing that the defendant's purported reasons have no basis in fact, which her evidence tends to do. *Id.* Whether or not Carl genuinely believed these difficulties warranted plaintiff's termination, given the situation illustrated by the testimony, is a question properly left for a jury to determine.

### Conclusion

The plaintiff has raised genuine issues of material fact as to the sincerity of the defendant's purported reasons for her termination. A reasonable jury could find that R.C. Wegman's given reasons for Gruidl's termination were a pretext for discrimination. Because genuine issues of material fact exist, summary judgment is inappropriate. Therefore, the defendant's motion is denied.

SO ORDERED: 12/3/01

ENTER.

HON. RONALD A. GUZMAN
United States Judge

-13-